**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nathan Culver,<br><br>　　　　Plaintiff,<br><br>v.<br><br>NXP USA Incorporated Long Term Disability Insurance Plan, et al.,<br><br>　　　　Defendants. | No. CV-18-02205-PHX-DWL<br><br>**ORDER** |

Pending before the Court is Plaintiff Nathan Culver's ("Culver") motion to conduct discovery (Doc. 40), which Defendants oppose (Doc. 48). As explained below, the motion will be denied.

## BACKGROUND

Culver is a former employee of Defendant NXP USA, Inc. ("NXP") who, after becoming disabled in October 2014, sought benefits under NXP's Long Term Disability Insurance Plan. (Doc. 40 at 1-3.) NXP self-funded this plan and hired a pair of third-party companies—first Aetna and then Prudential—to serve as plan administrators. (Doc. 40 at 1-3; Doc. 48 at 2-3.) Both companies were hired pursuant to a "flat fee" contract that called for them to receive a set fee from NXP for each claim they administered. (Doc. 48 at 2-3.) Aetna approved Culver's initial claim for long-term disability benefits, which covered the period from May 2015 through October 2016, but then terminated his benefits after determining he was able to return to work. (Doc. 40 at 3.) In May 2018, Prudential—which, by that time, had replaced Aetna as NXP's plan administrator—denied Culver's

appeal of the termination decision. (*Id.*) Culver contends that NXP saved over $160,000 due to the wrongful denial of his disability claim. (*Id.*)

## ANALYSIS

The parties' dispute concerns whether Culver should be allowed to propound discovery aimed at determining whether Aetna and Prudential were afflicted by a conflict of interest when they denied his claims.

In his brief, Culver argues he's entitled to conduct such discovery, even though NXP self-funded its insurance plan and delegated authority to Aetna and Prudential to make claims decisions, because (1) under *Wallace v. Intel Corp.*, 2006 WL 2709839 (D. Ariz. 2006), the delegation of claim-administration responsibility to a third party doesn't eliminate the existence of a conflict of interest (Doc. 40 at 3-4), (2) the "dirty, and far too often unknown secret in the disability insurance industry" is that companies like Prudential hire "conflicted and biased" doctors to deny meritorious claims (*id.* at 4-5), (3) the Ninth Circuit has repeatedly "allowed conflict discovery into an administrator's relationship with its third-party vendor(s), and also to the third-party vendor's reviewing medical professionals," as well as "into whether the Plan has a history of parsimonious claims handling" (*id.* at 5), and (4) the only way to obtain evidence of such practices is to propound discovery, because "conflict evidence never resides in a claim file" and "a court cannot perform an adequate *Abatie* credibility determination without discovery" (*id.* at 5-6).

In their brief, Defendants argue that (1) conflict-of-interest discovery is only appropriate in "dual role" ERISA cases, unlike this case, where the entity that funds the plan also resolves claims for benefits (Doc. 48 at 3-4), (2) the one case that seems to authorize conflict discovery outside the dual-role context, *Wallace,* is no longer good law in light of subsequent Ninth Circuit and Supreme Court decisions (*id.* at 4-5), and (3) to the extent Culver may be entitled to any conflict-of-interest discovery, he already has the relevant documents (NXP's contracts with Aetna and Prudential), [1] so his additional

---

[1] Defendants filed redacted versions of these contracts as exhibits to their opposition (Docs. 48-2, 48-3) and have separately requested permission to file unredacted versions of the contracts under seal with the Court (Doc. 49). That request will be granted.

demands are irrelevant and disproportionate to the needs of the case (*id.* at 5-7).

The Court agrees with Defendants. Although the Ninth Circuit has recognized that a plaintiff in an ERISA case may be entitled to seek and introduce conflict-of-interest evidence—because the presence of a conflict of interest triggers a less-deferential standard of review—its decisions applying this principle have involved "dual role" relationships where the same entity was responsible for funding the plan and making claims decisions (and, thus, had a financial incentive to deny as many claims as possible). *See, e.g., Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 900 (9th Cir. 2016) ("MetLife has a structural conflict of interest because MetLife both evaluates claims made against the Plan and funds claims."); *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 629-30 (9th Cir. 2009) (holding that the standard of review in ERISA cases becomes "more complex" when "the same entity that funds an ERISA benefits plan also evaluates claims, as is the case here"); *Nolan v. Heald College*, 551 F.3d 1148, 1153 (9th Cir. 2009) ("[T]he parties agree that MetLife operates under a structural conflict of interest as an entity that both determines eligibility for benefits and pays benefits awards."); *Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1027 (9th Cir. 2008) ("[A] structural conflict of interest does exist . . . . Because the district court did not consider the Plan's structural conflict of interest as a factor in making its decision, we vacate the district court's ruling and remand for further proceedings consistent with this opinion."); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965-66 (9th Cir. 2006) (en banc) (recognizing that "an insurer that acts as both the plan administrator and the funding source for benefits operates under what may be termed a structural conflict of interest" and that "such an inherent conflict of interest . . . ought to have some effect on judicial review").

This doesn't seem to be a coincidence. In *Nolan*, the court explained that the relevance of the type of evidence now sought by Culver[2] flowed from the fact that it "bore

---

[2] *Nolan* involved evidence that the supposedly independent doctors utilized by the insurance company actually "received substantial work and monies from MetLife in the three-to-four years preceding and including Nolan's benefits denial" and were thus "biased in favor of MetLife." 551 F.3d at 1150, 1152-54. Here, similarly, Culver seeks to propound discovery requests seeking, *inter alia*, "contractual, financial, and claim statistical information regarding the relationships between Prudential, MCMC and Drs.

on MetLife's structural conflict of interest." 551 F.3d at 1150. Here, however, there is no structural conflict of interest—NXP has no role in administering claims and its third-party administrators, Aetna and Prudential, aren't financially responsible for paying successful claims. *Day v. AT&T Disability Income Plan*, 698 F.3d 1091, 1096 (9th Cir. 2012) ("The district court did not err in finding no inherent or structural conflict of interest. The Plan is funded by AT & T and not Sedgwick, and administered by Sedgwick and not AT & T.").[3] It follows that Culver isn't entitled to the categories of evidence he wishes to obtain through his proposed discovery requests—although those materials may be helpful in establishing the *severity* of a structural conflict of interest, *see Nolan*, 551 F.3d at 1150, there is no Ninth Circuit case establishing they are subject to discovery in the *absence* of a structural conflict. *Burke*, 544 F.3d at 1028 n.15 ("Whether to permit discovery into the nature, extent, and effect of [a] Plan's *structural* conflict of interest is . . . a matter within the district court's discretion.") (emphasis added). *See also Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1162 (10th Cir. 2010) (concluding that although discovery is generally disfavored in ERISA cases, "discovery related to the scope and impact of a *dual role* conflict of interest may, at times, be appropriate") (emphasis added).

Finally, even if the materials sought by Culver might be discoverable despite the absence of a dual-role relationship, as some district courts have concluded,[4] the Court

---

Selkirk/McKenna." (Doc. 40 at 6.)

[3] Although Culver acknowledges that NXP delegated all claims-handling responsibility to Aetna and Prudential, and further acknowledges that NXP self-funded the plan at issue (Doc. 40 at 3), he argues these factors aren't sufficient to eliminate the conflict of interest. (Doc. 40 at 3-4 ["Delegation of claim administration does not eliminate conflicts and bias."].) However, Culver cites only one unpublished district court decision in support of his position: *Wallace v. Intel Corp.*, 2006 WL 2709839 (D. Ariz. 2006). Moreover, although *Wallace* contains some passages that can be read, in isolation, to support Culver's position, *see id.* at *6, those passages are bookended by the *Wallace* court's observations that "the Court [has not] uncovered . . any precedent in this Circuit indicating whether a structural conflict of interest can be eliminated by contractually delegating authority to a third party administrator" and that "the Court cannot be certain whether the Ninth Circuit would also hold that a structural conflict is eliminated by delegating authority to a third party administrator." *Id.* at *6-7. *Wallace*, in other words, doesn't affirmatively hold that a structural conflict of interest exists even when a company self-funds an insurance plan and hires a third-party administrator on a flat-fee basis—it simply notes the absence of binding Ninth Circuit authority on that issue circa 2006.

[4] *See, e.g., Leu v. Cox Long-Term Disability Plan*, 2009 WL 2219288 *3-4 (D. Ariz. 2009); *Mazur v. Pacific Telesis Grp. Comprehensive Disability Benefits Plan*, 2008 WL

would exercise its discretion to deny his discovery request under Rule 26(b)(1) due to a lack of proportionality. Culver already has copies of NXP's contracts with Aetna and Prudential, and authorizing the type of wide-ranging discovery being sought here in every ERISA case, even those without a structural conflict of interest, would undermine "a primary goal of ERISA, which endeavors 'to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously.'" *Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) (citation omitted). *See also Jones v. PepsiCo, Inc.*, 185 F. Supp. 3d 437, 444 (S.D.N.Y. 2016) ("[Jones] argues that Sedgwick has a conflict of interest because it has a financial incentive to keep PepsiCo happy—and its contracts intact—by denying claims. But that logic would apply to any third-party administrator and make it virtually impossible to administer an ERISA plan without a conflict of interest.").

Accordingly, **IT IS ORDERED** that:

(1) Culver's motion for discovery (Doc. 40) is denied; and

(2) Defendants' motion to seal (Doc. 49) is granted.

Dated this 12th day of February, 2019.

_____
Dominic W. Lanza
United States District Judge

---

564796, *2 (N.D. Cal. 2008).

- 5 -