**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nathan Culver,<br><br>    Plaintiff,<br><br>v.<br><br>NXP USA Incorporated Long Term Disability Insurance Plan, et al.,<br><br>    Defendants. | No. CV-18-02205-PHX-DWL<br><br>**ORDER** |

Pending before the Court is Plaintiff Nathan Culver's ("Culver") motion to supplement the administrative record or remand (Doc. 59), which Defendants oppose (Doc. 62). Neither party has requested oral argument. As explained below, the motion will be granted to the extent it seeks a remand.

**BACKGROUND**

Culver is a former employee of Defendant NXP USA, Inc. ("NXP") who, after becoming disabled in October 2014, sought benefits under NXP's Long Term Disability Insurance Plan. NXP self-funded this plan and hired a pair of third-party companies—first Aetna and then Prudential—to serve as plan administrators.

In April 2015, Aetna denied Culver's initial application for long-term disability ("LTD") benefits. (Doc. 62-2 at 24-26.)

In September 2015, Culver appealed this decision. (Doc. 62-2 at 18.)

On August 16, 2016, Aetna reversed its previous decision and granted Culver's application for LTD benefits. (Doc. 59-1.) However, Aetna also sent a separate letter to

1  Culver on that date in which it explained that its definition of disability would be changing
2  in November 2016 and thus asked Culver to submit an array of additional medical
3  information. (Doc. 59-3 at 3.)

On August 22, 2016, Aetna sent another letter to Culver encouraging him to apply for Social Security disability benefits. (Doc. 59-2.) This letter explained that, "[a]lthough your [LTD] benefit would be reduced by any Social Security disability benefits you may receive, you and your family still stand to gain some very significant financial advantages by obtaining a Social Security award . . . ." (*Id.*) In response, Culver faxed a letter to Aetna confirming that he'd already submitted such an application. (Doc. 62-2 at 9.)

During September and October 2016, Aetna made repeated requests to Culver's attorney to supply additional medical information, but these requests were either ignored or inadequately addressed. (Doc. 59-3 at 3; Doc. 62-2 at 42-45.)

On October 15, 2016, Culver executed a consent form that authorized Aetna to obtain his "entire Social Security file including all medical records, Financial records, consultations, reviews, exams, etc." from the Social Security Administration ("SSA"). (Doc. 59-5.)

On November 1, 2016, Aetna terminated Culver's LTD benefits and sent Culver a letter explaining that this decision was based on his failure to provide requested medical information. (Doc. 59-3.)

In April 2017, Culver appealed this decision and submitted some additional medical records in support of his appeal. (Doc. 62-2 at 2-3.)

In August 2017, Prudential (which had now replaced Aetna as the claims administrator) upheld the November 2016 termination of LTD benefits. (Doc. 62-2 at 63-68.)

In February 2018, Culver appealed this decision. (Doc. 62-2 at 21.) In support of this appeal, Culver informed Prudential that "he has now been determined to qualify for Social Security Disability Insurance. Although he has not yet received the final written decision, we have included a letter from Mr. Culver's Social Security Disability attorney

outlining the current status of his claim." (*Id.*) In addition, Culver also submitted an array of additional medical records. (*Id.* at 21-22.)

On March 12, 2018, the SSA issued a formal written decision upholding Culver's application for disability benefits. (Doc. 59-4 at 7-15.) The next day, Culver faxed a copy of the decision to Prudential. (Doc. 62-2 at 49.)

On April 10, 2018, Prudential issued a decision upholding its earlier decision to deny LTD benefits. (Doc. 59-5.) In its denial letter, Prudential acknowledged the SSA's contrary decision but explained that "the approval of one type of benefit does not mean that another type of disability benefit will be approved; nor does the denial of one type of benefit mean that another type of disability benefit will be denied." (*Id.* at 10.)

**DISCUSSION**

There are 249 pages of medical records contained in Culver's SSA file that aren't part of the administrative record in this case (meaning they also weren't considered by Prudential when it rejected Culver's appeal in April 2018).[1] The SSA relied on some of these records when concluding that Culver was disabled.

In his motion, Culver faults Prudential for failing to obtain the 249 pages of medical records before issuing its April 2018 decision. (Doc. 59). Among other things, he points out that Prudential had a signed release authorizing it to obtain his SSA file and that the SSA's decision specifically identifies two medical records (which are part of the missing 249 pages) that demonstrate his disability. (Doc. 59 at 9-12; Doc. 65 at 3-7.) He thus asks the Court to either (1) "allow the current Administrative Record to be supplemented with the aforementioned records" or (2) "remand the case to Prudential with an Order that it obtain and fully consider Plaintiff's SSA claim file . . . ." (Doc. 59 at 12.)

---

[1] Defendants argued in their opposition brief that "Culver has provided no foundation to substantiate that the documents he now seeks to add to the administrative record were part of the SSDI file. . . . Thus, there is no evidence that any failure to obtain the SSDI file resulted in failure to obtain these records." (Doc. 62 at 8.) In response, Culver submitted a declaration from his attorney in the Social Security proceeding, who avows that "I have reviewed the 249 pages [at issue here] and can verify the documents are pages from Mr. Culver's Social Security Administration claims file." (Doc. 65-15 ¶ 11.) The Court is satisfied, based on this representation, that the 249 pages at issue here were, in fact, included in Culver's SSA file.

In response, Defendants argue that, although Culver was repeatedly asked to supply all of the medical information necessary to support his claim, he failed to submit the 249 pages at issue here and "offers no explanation for why he submitted them to SSA, but did not send them to Aetna or Prudential during his two appeals." (Doc. 62 at 10.) Defendants thus conclude that "[i]f the Administrative Record is deficient, it is solely because Culver failed to meet his obligation to submit proof of disability." (*Id.* at 10-11.)

The Court concludes that a remand is the proper outcome here. The starting point for the analysis is 29 C.F.R. § 2560.503-1(g)(1)(iii), which provides that an ERISA plan administrator is required to provide, "in a manner calculated to be understood by the claimant," "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." *Id.* Defendants' position, in a nutshell, is that Prudential satisfied its obligations under this regulation by repeatedly reminding Culver that he was responsible for submitting any documentation he wished to be considered in support of his claim for ERISA benefits. Culver's position, meanwhile, is that Prudential was required to go beyond this generic reminder and either (1) specifically tell him that he needed to submit the medical records discussed in the SSA's decision awarding disability benefits or (2) make efforts to obtain those records directly from the SSA, using the release he'd previously executed.

Although there is no Ninth Circuit authority directly on point, *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623 (9th Cir. 2009), tends to support Culver's position. In *Montour*, the plaintiff submitted a claim for LTD benefits to the insurance company administering his employer's ERISA plan (Hartford) and also filed a disability claim with the SSA. In March 2004, the SSA concluded the plaintiff was totally disabled, yet the insurance company issued a contrary decision in August 2006 concluding the plaintiff wasn't disabled. *Id.* at 635. The insurance company later rejected the plaintiff's appeal in a decision that "acknowledged the SSA's decision but did not articulate why the SSA might have reached a different conclusion." *Id.* The Ninth Circuit reversed, holding that the

denial of the plaintiff's ERISA claim was erroneous in part because "the administrative record in this case" did not contain "the opinion by the SSA administrative law judge (ALJ) *or the SSA administrative record on which that decision was based*." *Id.* at 636 (emphasis added). Although the court acknowledged the plaintiff generally had the burden of supplying "written proof" of his disability, it concluded the insurance company (not the plaintiff) was ultimately to blame for the evidentiary void because it had an affirmative obligation to identify any deficiencies in the administrative record and never made a specific request to the plaintiff for the materials contained within his SSA file:

> Although the Plan places the burden on Montour to submit "written proof" of his disability, that is, the pertinent LTD documents and information necessary to facilitate a disability determination, ***regulations promulgated by the Secretary of Labor authorize, if not require, plan administrators working with an apparently deficient administrative record to inform claimants of the deficiency*** and to provide them with an opportunity to resolve the problem by furnishing the missing information. . . . Although the record reflects that Montour kept Hartford regularly apprised of his continuing disability status with the SSA, Hartford's initial decision in this case made no mention of the contrary SSA disability determination and ***did not advise Montour that further documentation, such as the ALJ's decision or the underlying administrative record, would facilitate Hartford's review***.

*Id.* at 636-67 (citing 29 C.F.R. § 2560.503-1(f)(3)-(4), (g)(1)(iii)) (emphases added).

Admittedly, *Montour* is not on all-fours with this case. There, the plaintiff wasn't asking for the administrative record to be supplemented with the missing materials or for the case to be remanded so the insurance company could reassess his claim for benefits in light of the missing materials. Instead, the Ninth Circuit concluded the insurance company's failure to gather and consider all of the relevant records was simply "another factor to consider in reviewing the administrator's decision for abuse of discretion." *Id.* at 637. Additionally, the administrator in *Montour* was "operating with a conflict of interest," *id.*, whereas this case doesn't involve a dual-role relationship. (*See generally* Doc. 53.) Nevertheless, *Montour* can be fairly read as holding that, when it becomes apparent to an insurance company administering an ERISA plan that the contents of the claimant's SSA file are necessary to assess the claim for LTD benefits, the administrator is required under

29 C.F.R. 2560.503-1 to inform the claimant of the need for these particular materials—a general reminder of the need to submit all "pertinent documents and information" will not suffice. *See also Sterio v. HM Life*, 369 Fed. App'x 801, 804 (9th Cir. 2010) (concluding that insurance company "failed to adequately investigate [a claim for LTD benefits] and request medical evidence" where the SSA reached a "contrary disability determination" yet the insurance company "did not procure the SSA file or ask Sterio to do so").

Meanwhile, the Eleventh Circuit's decision in *Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663 (11th Cir. 2014), supports Culver's argument that a remand to Prudential is an appropriate remedy under these circumstances. In *Melech*, the plaintiff submitted a claim for LTD benefits to the insurance company responsible for administering her employer's ERISA plan (LINA) and later submitted, at the insurance company's request, an application for disability benefits to the SSA. *Id.* at 665. In November 2007, the insurance company denied the claim for LTD benefits, but in February 2008, the SSA issued a decision approving the claim for disability benefits. *Id.* The claimant informed the insurance company of the SSA's decision, yet the insurance company proceeded to deny a series of administrative appeals "without considering or even asking Melech for the SSA's decision . . . or any other evidence before the SSA." *Id.* at 665-66. When the case moved to federal court, the insurance company sought to justify its conduct by arguing—just as Defendants argue here—that the claimant should bear the blame for failing to provide it with the medical records she'd submitted to the SSA. *Id.* at 671 ("LINA maintains that it only had an obligation to evaluate information . . . if Melech submitted that evidence during the pendency of her claim. And so, '[s]ince Plaintiff failed to present available evidence to LINA during the claim's adjudication process, she cannot now fault LINA, or the District Court, for failing to consider such evidence.'"). The Eleventh Circuit rejected this argument and remanded to the insurance company for further proceedings. *Id.* at 673-77. On the one hand, the court recognized that an ERISA claimant generally has "the burden of proving her entitlement to disability benefits under the Policy," which includes "the obligation to provide [the administrator] with medical evidence to support a finding that

she was 'disabled,'" and that an insurance company is generally not required "to ferret out evidence in [the claimant's] or the SSA's possession." *Id.* at 673. On the other hand, the court held that when an insurance company requires an ERISA claimant to submit a parallel claim for SSA disability benefits, and then learns the SSA has approved the application, the insurance company is "not free to ignore the evidence generated by the SSA process as soon as it no longer had a financial stake in the amount of money the SSA decided to award." *Id.* at 675. The court concluded that the insurance company's "treatment of Melech's SSA application is inconsistent with the fundamental requirement that an administrator's decision to deny benefits must be based on a complete administrative record that is the product of a fair claim-evaluation process. Because LINA's decision to deny benefits here was based on an administrative record that did not contain the information from Melech's SSA file, the proper course of action is to remand Melech's claim to LINA rather than to evaluate the merits of Melech's claim for benefits under the Policy using evidence that LINA did not consider." *Id.* at 676.

So, too, here. Aetna encouraged Culver to apply for SSA disability benefits, and its successor Prudential became aware the SSA had granted his application, yet Prudential then proceeded to deny his claim for LTD benefits without obtaining copies of the key medical records, discussed in the SSA's opinion, that supported the SSA's disability determination. Although Culver is not blameless in this affair—Prudential reminded him on multiple occasions of the need to submit all medical documentation that might support his claim, yet he inexplicably failed to introduce the full set of records he'd submitted to the SSA—*Montour*, *Sterio*, and *Melech* suggest that Prudential was required to go beyond generic requests for documentation, and ask for copies of the specific medical records discussed in the SSA's opinion, once it became aware of that opinion.[2]

…

---

[2] *May v. AT&T Integrated Disability*, 579 Fed. App'x 690 (11th Cir. 2014), which Defendants cite in their brief (Doc. 62 at 10), is not to the contrary. There, the SSA hadn't even issued a decision at the time the insurance company denied the claim for ERISA benefits. 579 Fed. App'x at 691. Additionally, unlike here, "the terms of the Plan [did] not require participants to apply for Social Security disability benefits and [did] not reduce Plan benefits by any amount received from the SSA." *Id.* at 692.

Accordingly, **IT IS ORDERED** that:

(1) Culver's "motion to supplement the administrative record with records from plaintiff's SSA claim and other relevant records, or in the alternative, motion to remand the case" (Doc. 59) is **granted in part**;

(2) This action is **remanded** to Prudential for further consideration consistent with this decision; and

(3) The Clerk of Court shall **terminate** this action and enter judgment accordingly.

Dated this 22nd day of May, 2019.

Dominic W. Lanza
United States District Judge